Filed 11/2/22  P. v. Cox CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B313725 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA076997) |
| v. | |
| GLENN MARTIN COX, | |
| Defendant and Appellant. | |

THE COURT:

Defendant and appellant Glenn Martin Cox appeals from the trial court's denial of his petition for resentencing under former Penal Code section 1170.95,[1] which allows defendants convicted of felony murder under superannuated legal standards to seek resentencing relief.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.  Former section 1170.95 has since been renumbered as section 1172.6, with no substantive changes.

Cox's appointed counsel found no arguable issues and filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), asking this court to independently review the record. Under the standard we articulated in *People v. Cole* (2020) 52 Cal.App.5th 1023 (*Cole*), review granted October 14, 2020, S264278,[2] we decline counsel's invitation to undertake an independent review of the record. Instead, we evaluate each of the arguments Cox raises in his letter brief. (*Cole, supra,* at pp. 1039–1040.) Finding none of Cox's arguments meritorious, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.      The Murder Trial and Resulting Convictions

After a shooting at a New Year's Eve party resulted in one death and numerous injuries, Cox and two codefendants were charged with one count of murder (§ 187, subd. (a)) and three counts of attempted murder (§ 664; see also § 187, subd. (a)). Cox

---

[2]      There is currently a split in authority as to whether the independent review mandated by *Wende* applies to an appeal from the denial of a petition filed pursuant to former section 1170.95. (Compare *Cole, supra*, 52 Cal.App.5th at 1028 ["*Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief"]; *People v. Figueras* (2021) 61 Cal.App.5th 108, 111 [same], review granted May 12, 2021, S267870; and *People v. Gallo* (2020) 57 Cal.App.5th 594, 599 ["dismissal is discretionary, and . . . we can and should independently review the record on appeal in the interests of justice"]; *People v. Allison* (2020) 55 Cal.App.5th 449, 456 [same].) The issue is currently pending before the Supreme Court. (*People v. Delgadillo* (Nov. 18, 2020, B304441 [nonpub. opn.], review granted Feb. 17, 2021, S266305.) Pending guidance from the Court in *Delgadillo,* we continue to adhere to the reasoning set forth in *Cole.*

and his compatriots, admitted gang members, were accused of opening fire on the partygoers following a brief confrontation earlier in the day with persons they perceived to be rivals or targets of their gang. (See *People v. Weddle* (Feb. 1, 2012, B226368) [nonpub. opn.].)

The prosecution attached a flurry of special allegations to Cox's charges. First, it alleged that he had committed all four counts "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Next, it alleged three firearm enhancements for Cox's "personal[] [and intentional] use of a firearm [or handgun]" (§ 12022.53, subd. (b)), his "personal[] and intentional[] discharge[] [of] a firearm [or handgun]" (§ 12022.53, subd. (c)), and for the "great bodily injury [and] death" which his discharge of the handgun proximately caused (§ 12022.53, subd. (d)). It also alleged separate firearm enhancements for the "personal[] and intentional[]" use and discharge of a firearm or handgun proximately causing great bodily injury and death by a principal of the crime (§ 12022.53, subds. (d), (e)(1)). Lastly, it alleged that Cox had previously committed two prior serious or violent felonies or juvenile adjudications. (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i).)

In 2010, a jury convicted Cox on all counts. It found true on all counts the allegations that a principal had personally and intentionally discharged a firearm proximately causing great bodily injury or death, and that Cox had personally and intentionally used and discharged a firearm.

The trial court sentenced Cox to 75 years to life on the murder conviction, with an additional 25 years to life for the

firearm allegation. On each of the three attempted murder convictions, the trial court sentenced Cox to consecutive life terms. The trial court added an additional five years to each of the aforementioned sentences for one of his prior serious felonies, and stayed sentencing on the gang allegations.[3]

Cox's case went up on appeal, and the judgment and sentence were affirmed. (*People v. Weddle*, *supra*, B226368, at p. 1.)

## II.    Petition for Resentencing

On September 30, 2018, the Governor signed Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Sen. Bill 1437) in order to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Effective January 1, 2019, Sen. Bill 1437 added former section 1170.95, subd. (a), creating a procedure whereby a person convicted of, as relevant here, "murder under . . . [any] theory under which malice is imputed to a person based solely on that person's participation in a crime, [or] attempted murder under the natural and probable consequences doctrine," but who could not now be convicted, can petition to have the murder conviction vacated and to be resentenced. (Stats. 2018, ch. 1015, § 4.)

On July 29, 2020, Cox filed a petition for resentencing pursuant to former section 1170.95. On June 25, 2021, the trial court denied the petition, finding, among other things, that "as a

---

[3]    The trial court struck Cox's second serious felony conviction.

4

matter of law . . . [Cox] has not made the *prima facie* showing that he is entitled to relief." The court reasoned that "[t]he prosecution did not pursue a felony murder theory," that the jury was not instructed on felony murder or natural and probable consequences theory, and that Cox "was found to have personally used a firearm in the commission of the murder."[4]

This appeal followed. Cox's appointed counsel filed a brief pursuant to *Wende, supra*, 25 Cal.3d 436 raising no issues.[5]

On June 27, 2022, we notified Cox of his counsel's brief and gave him leave to file his own brief or letter stating grounds for appellate relief. On July 25, 2022, he filed a letter brief.

---

[4] The trial court held that the three attempted murder convictions were not eligible for resentencing relief under former section 1170.95 pursuant to *People v. Lopez* (2019) 38 Cal.App.5th 1087 (*Lopez*), review granted November 13, 2019, S258175. *Lopez* has since been superseded by Senate Bill No. 775 (2021-2022 Reg. Sess.), which extends the provisions of former section 1170.95 to cover convictions for attempted murder. (Stats. 2021, ch. 551.) However, the trial court alternately found that, like the murder conviction, the attempted murder convictions were not obtained on an imputed malice theory.

[5] As mentioned above, we have held that "the procedures set forth in *Wende* do not apply to appeals from the denial of postconviction relief," such as the resentencing relief provided by former section 1170.95. (*Cole, supra*, 52 Cal.App.5th at 1032.) However, counsel has similar duties when representing a defendant appealing from the denial of postconviction relief. (*Id.* at p. 1038 [requiring counsel to independently review the entire record, and, if they determine that there are no reasonably arguable issues, file a brief stating as much].)

5

## DISCUSSION

Per our opinion in *Cole*, we will "evaluate any arguments presented" by Cox's brief, but will not undertake an "independent . . . review [of] the record for reasonably arguable issues." (*Cole*, *supra*, 52 Cal.App.5th at pp. 1039–1040.)

Cox presents us with four basic arguments on appeal, none of which demonstrate that he is entitled to relief under former section 1170.95. We address each of these arguments in turn.

## I. Cox's Convictions Were Not Prosecuted on a Theory of Imputed Malice

### A. *Cox was prosecuted as a direct aider and abettor*

First, Cox contends that his murder and attempted murder convictions are covered by former section 1170.95 because, contrary to the trial court's findings, the prosecution did employ a theory of imputed malice at Cox's trial.

Cox's argument ignores the distinction between liability based on a direct aiding and abetting theory and liability based on imputed malice. "Our law recognizes two forms of liability for aiders and abettors. [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.] [¶] Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted." (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*), superseded by statute on

6

another ground as stated in *People v. Hola* (2022) 77 Cal.App.5th 362, 369–370.)

These two theories are primarily distinguished by their different intent requirements. The latter essentially transfers the actual killer's intent "'to a person based solely on his or her participation in [the] crime'" which resulted in the killing. (*Gentile*, *supra*, 10 Cal.5th at p. 847.) The former, however, requires "a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117 (italics in original).) In other words, "when a person 'chooses to become a part of the criminal activity of another, []he says in essence, "your acts are my acts . . . "'" [Citations.] But that person's *own* acts are also [his] acts for which [he] is also liable. Moreover, that person's mental state is [his] own; [he] is liable for [his] mens rea, not the other person's." (*Ibid.*)

In conflating these two theories, Cox's argument misstates the law. A person can be convicted as a direct aider and abettor without there being any possibility of his being convicted under a doctrine of imputed malice. (See *Gentile*, *supra*, 10 Cal.5th at p. 844.) Therefore, a murder conviction attained on a direct aiding and abetting theory is not necessarily covered by former section 1170.95.

The instructions that Cox's jury received on aiding and abetting, particularly jury instruction number 401 (entitled "AIDING AND ABETTING, INCHOATE, AND ACCESSORIAL"), demonstrate that Cox was tried and convicted for *directly* aiding and abetting the murder and attempted murders, not for indirectly aiding and abetting them under a theory of felony murder or the natural and probable consequences

7

doctrine.[6]  Accordingly, Cox was convicted for his own acts—which the jury concluded involved his personally discharging a firearm—and for his own malicious intent when he joined his codefendants in committing those acts.[7]  He was not convicted of murder on any "theory under which malice is imputed to a person based solely upon that person's participation in a crime." (Former § 1170.95, subd. (a).)

Thus, the trial court correctly found that Cox is ineligible for relief under former section 1170.95.

B.      *The jury was not instructed on the natural and probable consequences doctrine*

Second, Cox insists that the jury *was* instructed on the natural and probable consequences doctrine, raising the possibility that he was convicted under that doctrine and is thus eligible for resentencing per former section 1170.95.  This argument is based solely on jury instruction number 520, which

---

[6]      Jury instruction number 401 reads, in pertinent part: "Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

[7]      To the extent that Cox argues that the jury wrongly found that he acted with malicious intent, those arguments are foreclosed by the resolution of his direct appeal in *People v. Weddle, supra*, B226368.  (See *People v. Price* (2021) 71 Cal.App.5th 1128, 1152, review granted Feb. 9, 2022, S272572 [former § 1170.95, subd. (d)(2) does not support inference that Legislature intended petitioners to be able to freely relitigate all other findings] [cited approvingly by *People v. Strong* (2022) 13 Cal.5th 698, 714].)

8

Cox alleges "has language from the natural and probable consequence doctrine."

Cox's argument misinterprets the jury instruction. The objected-to portion of jury instruction number 520 reads as follows: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence."

Despite its use of the words "natural and probable consequence," the language of this jury instruction is neither derived "from" nor in reference to the natural and probable consequences doctrine. It is taken directly from the standardized language of CALCRIM jury instruction number 520, which provides instruction on the law of first or second degree murder— not on the natural and probable consequences doctrine or any other theory of imputed malice.

## II. The Trial Court Correctly Found That Cox Could Not Make the Prima Facie Showing Required for Resentencing Relief

Cox argues that the trial court erroneously determined his eligibility for resentencing before issuing an order to show cause setting a date for an evidentiary hearing on the resentencing petition. Cox characterizes this determination as "premature fact finding" which "contravened the terms of [former] section 1170.95."

Cox is incorrect. Former section 1170.95 states that the trial court "shall hold a hearing to determine whether the

9

petitioner has made a prima facie case for relief," and only authorizes it to grant an order to show cause "[i]f the petitioner makes a prima facie showing that the petitioner is entitled to relief." (Former § 1170.95, subd. (c).) A petitioner demonstrates entitlement to relief by showing all of the following: (1) that an "information . . . was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) that "[t]he petitioner was convicted of murder [or] attempted murder . . . following a trial," and; (3) that "[t]he petitioner could not presently be convicted of murder or attempted murder" following the changes made by Sen. Bill 1437. (Former § 1170.95, subd. (a)(1)-(3).)

While the trial court's factfinding powers are limited during this prima facie assessment, the court may rely on factual and procedural determinations made in prior proceedings to the extent that they reflect on the petitioner's eligibility for resentencing. (*People v. Lewis* (2021) 11 Cal.5th 952, 971 ["'[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."' [Citation.]"].)

Here, the trial court found that Cox had been neither prosecuted nor convicted on a theory of imputed malice. The record of Cox's trial confirms the trial court's finding. Cox

10

therefore had no basis to assert that he could not presently be convicted of murder or attempted murder under the new standards of law adopted by Sen. Bill 1437, and therefore he could not meet the third element required to make a prima facie case and progress to an evidentiary hearing under former section 1170.95.

## III. Ineffective Assistance of Counsel

Finally, Cox argues that he was given ineffective assistance of counsel because his appointed counsel filed a *Wende* brief instead of "argu[ing] [hi]s case." He is incorrect. "[T]he constitutional right to assistance of counsel entitles an indigent defendant to independent review by the Court of Appeal when counsel is unable to identify any arguable issue on appeal. California's [*Wende*] procedure for securing this right requires counsel to file a brief summarizing the proceedings and the facts with citations to the record . . . ." (*People v. Kelly* (2006) 40 Cal.4th 106, 119.) The United States Supreme Court approved the *Wende* procedure in *Smith v. Robbins* (2000) 528 U.S. 259. (*People v. Kelly, supra*, 40 Cal.4th at p. 118.) Thus, Cox's counsel did not render constitutionally ineffective assistance simply by filing a *Wende* brief.

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____
ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

11